May it please the Court, Jeff Brandt for Mr. Meza-Lopez. This is an appeal from a denied 2255 motion in which the District Court certified for appeal the question of whether ineffective assistance of counsel led to an invalid plea. We have two substantive arguments in support of a finding that there's an invalid plea. The first of which is that the mens rea element of the conspiracy to launder money was not shown in the factual basis. To the District Court, the factual basis as to mens rea was sufficient because Meza was asked whether he, quote, knew that the money was hidden in the vehicle so that the government would not find it, end quote. And he answered he did. That's docket number 139, the order at page 6, citing the plea hearing at page 30. That certainly answers the question of whom the money was hidden from, but Dvorak and other cases from this circuit demonstrate that you have to show the purpose. Why is it hidden, quote, to conceal or disguise the nature, location, source, or ownership or the control of the proceeds? Mr. Meza stating that the money was hidden from the government doesn't tell us the purpose. Why was it concealed? To the government, the factual basis as to mens rea was sufficient because Meza made a statement at the plea hearing that his cousin wanted the money hidden from the government because it was money from drug sales. To the government, this is somehow an admission by Mr. Meza that he knew at the time of the offense that that was the purpose. But that's not what Mr. Meza said. On two direct occasions, when asked point blank if he knew the money was hid to avoid the government learning the type, the aspect of the money being money from illegal drug sales, neither time did he answer. That's at page 24 and at page 30. Like the district court said, the magistrate judge was asking the wrong questions or maybe more specifically, not getting answers to the right questions. The government asserts that in QALAR... What about page 30? Question. You didn't want the government to find it because you knew the money was from drug sales. Answer. My cousin is the one that didn't want it to be known. Question. But you knew the money that was coming in those cars was from selling drugs. Answer. Yes, but it did not belong to me. Correct, Your Honor. All right. So why isn't that enough of a factual basis to say he knew at the time that it was drug money, even though it wasn't his money and it was the cousin who wanted it hidden? Because I don't think... I think that's a statement that he can say, now I know. He's stating, that's what my cousin wanted. That's not... Well, the second question was, but you knew that the money was from selling drugs. Answer. Yes, but it did not belong to me. Isn't that an admission of knowledge at the time of the transportation? We submit that it's not. He definitely asserts that he knows... But in order to be ineffective, the lawyer would have to have no reasonable basis to believe that that was a factual basis, right? It's not just a de novo review at this time of factual basis. It's a de novo review of the Strickland, but not of the factual basis. Couldn't a reasonable attorney think that his client there was admitting that he knew at the time? I think on the whole record, no, Your Honor. The number of times Mr. Meza asked to consult with counsel, the fact that there was a break, the fact that the magistrate judge is saying, hey, I'm having trouble finding a mens rea here. He's not making the right statement. It's not a classic money laundering case. It is not, Your Honor. Quayler tells us that it's not illegal to drive money down the road. Quayler tells us just saying you're hiding it isn't enough. We have to know what the purpose is. So many of the cases cited primarily by the government are jury trial cases. Yeah, there are all kinds of inferences that the jury can make from statements on the stand, but that's different than a guilty plea, Judge Beam. Wasn't this money simply the result of the transportation of the drugs to Arizona and the money coming back for the drugs to the source? Is that so? I'm having trouble finding this to be a laundering conspiracy plea by what's happened here. Well, certainly we don't have any argument that he had a valid plea to the drug conspiracy. It's only a challenge to the money laundering conspiracy. Yeah, the money laundering thing, yeah. I don't see the connection to the he was a mule and he carried the drugs down to Arizona. The money for the drugs were put in the place in the car and were found. That's the net of the whole transaction, isn't it? Yes, not only that, Your Honor. He's not even the mule. He's the packer for the mule. He's the person to take that analogy. He's the stuff putting something into the pack on the mule saying bye. The mule comes back, takes stuff out of that same pack. So it's even worse or a harder case for the government than a mule we would submit. But the issue isn't the validity of the plea. It's the effectiveness of counsel. And the argument is there. The layer beyond validity of the plea. Yes, Your Honor. I would say that's the core issue, obviously, if the plea is valid. I have a very tough case before you, Your Honors. But we would submit that there was an insufficient factual basis that Mr. Mesa tells his attorney, I'm having trouble pleading guilty to this. Why am I pleading guilty to this? In his 2255, he makes the assertion. What's the ineffective assistance? In recommending that the client plead guilty to something he's not guilty of. Go ahead, Your Honor. The district court takes as true Mr. Mesa's statements that he had problems pleading guilty, that his attorney told him, look, you have to. Because if you don't, they're going to stack you. They're going to run the two sentences consecutively, one on top of the other. And the district court says that's not enough. The government says that's not enough because an idea or a speculation on what sentence is going to be, that's not an effective assistance. That's not what happened here. That's not just an oops, I didn't know you're a career offender. Oops, I thought we were going to win that downward departure or that downward variance. This is hill versus locker. This is you have to give correct advice on what your sentence might be if you plead guilty versus going to trial. And here's an attorney saying this is what you're going to get if you plead, you're going to be okay. But if you don't do this, like I'm telling you to do right now, you're going to get consecutive sentences. That was probably not right, and that makes the plea invalid as well. Wasn't he advised by the court as to the possible sentence? He was advised as to the statutory maximums for each. How can there be any? I mean attorneys speculate and give advice and their opinion. That's what attorneys do. That's what they're appointed and hired to do is give opinions. Yes, Your Honor. And if the court accurately advises the defendant as to the range of punishment and the punishment, and that's accurate information, how? Gosh, every attorney that gives a piece of advice would be subject to an ineffective assistance. If the attorney says, as a matter of fact, if you go to trial, the judge is going to run these two sentences consecutively. And as a matter of fact, that's going to happen. And if you plead guilty, as a matter of fact, that's not going to happen. Well, did the counsel assure him that that would not happen? There was no evidentiary hearing. So all we know for sure by taking Mr. Mays's sworn statement as true is he was told, if you go to trial, plead guilty because if you go to trial, the judge is going to run those sentences consecutive. Yes, there's a little bit of inference that you have to make, but if that inference doesn't exist, the advice doesn't make any sense. Why would the attorney say plead guilty? It's going to be okay unless it necessarily, that bad what's going to happen if you go to trial and lose, that's not going to happen here, so plead guilty. Thank you, Your Honors. Very well. Mr. Higgins, we'll hear from you for the government. Thank you, Judge, Your Honors. Counsel, may it please the Court. I will address the two central issues, the factual basis and then the claim of coercion. The starting point on the factual basis for the guilty plea to the money laundering, we've got to start with the transaction. The transaction here isn't just driving a car with money in it. That's not a transaction. The transaction is the delivery of currency from one person to another. That's sufficient under the statute to constitute a transaction. So what we had here in the factual basis throughout the plea hearing was an arrangement whereby the defendant's cousin, co-conspirator, co-defendant up in Nebraska arranges to have the money put into cars that are then driven to Arizona, and then the cash is to be delivered on up the chain, but the defendant himself was the recipient of the cars. He was the car handler, so to speak. So the issue is whether or not the defendant knew that that design for the transaction was to conceal or disguise one of the five statutory attributes, the location, ownership, control, et cetera. And I think we need to look no further than the portion of the plea transcript that the court was quoting from a moment ago on page 30. The series of pointed questions that the magistrate put to the defendant that showed he knew that the purpose for hiding the money was so the government wouldn't find it. He said it was his cousin who wanted it not to be known, that it was drug money. But that's knowledge of the design of the transaction. And he also knew affirmatively by his admission that the money was from selling drugs. But how did the transporting the money disguise the source of the funds? Judge, it's not just transporting the money, disguising the source. It's the means by which this transaction occurred. That is, it's hidden in a car. It's handed to a third-party courier who's also one of the co-defendants and also testified or, excuse me, their information was proffered at the change of plea. A third-party courier in a car that was actually purchased by the co-conspirator but then put into the name of the courier. So now you've got a car going down the road. It's being driven by a third party. The car is registered to a third party and so whose money is it? Who is actually in control of the money? Using that third-party courier system provides a sufficient factual basis to show knowledge of how the transaction was designed. I think this case is actually analogous to United States v. SLAG. That's at 651 F3rd 832. The issue was framed in terms of the sufficiency of evidence at trial to support a money laundering conspiracy. What are the elements of this offense that you're describing? There must be a transaction. There's a conspiracy to accomplish an unlawful object, and the unlawful object is to conduct- You said a transaction and a conspiracy. Sorry. The charge was conspiracy to launder money. What are the elements of that crime? Certainly. The substantive elements are there must be a transaction. The transaction must involve the proceeds of an SUA, specified unlawful activity. Participant in the transaction or in the conspiracy has to know that they were proceeds, and the transaction has to be designed to conceal or disguise one of the five statutory attributes. The nature, the location, the source, the ownership, or control of the proceeds.  And what were the elements of proof of those requirements in this transaction of having the money brought back after the drug transaction with methamphetamine in Arizona? The transaction, starting with element one, was the delivery of currency from one person to another. That fits the statutory definition in 18 U.S.C. 1956 C3. That's the transaction. Second, there are proceeds. The defendant admitted he knew that they were proceeds from sale of methamphetamine. Drug trafficking is an SUA. I guess I kind of conflated those two elements. They have to be proceeds, and he knew they were proceeds, so we've covered two and three. And then the transaction has to be designed to conceal or disguise one of the five statutory attributes. Really, that last element, the knowledge of how the transaction was designed, I think that's the core of the issue. Right. So what's why hiding money from the government isn't enough to meet that element, is it? Let me address that by turning your attention to SLAG, the Eighth Circuit decision. That was the sufficiency of evidence at trial to show a concealment money laundering conspiracy. The evidence was sufficient, the court found, to show that it was proceeds, and the participants knew that they were proceeds. There were a series of jail calls about how they were going to post bond for one of the co-conspirators, and they were using disguise language, an attempted code, but they were expressing their concern that the bail money would be seized. They would say it would disappear. And so rather than simply delivering the cash proceeds directly to post the bond and run the risk of it being seized, they instead decided to pay a bail bondsman, conduct the transaction that way, deliver the cash through a bail bondsman, and the Eighth Circuit determined that that was a transaction that was designed to conceal or disguise the source and the ownership and control of those proceeds so as to reduce the risk of the government seizing them as drug proceeds. So our argument, Judge, is that this is an analogous situation where the transaction is designed to conceal or disguise at least those statutory actions. It was designed to get some drug money from Arizona back to Iowa or wherever it was. Well, Judge, I think practically speaking, you know, they want to get – it's all about the money in drug trafficking, and you don't succeed as a drug trafficker unless, you know, you ultimately get the money. I understand that use of the word purpose. We're talking about a different question, and that is how was the transaction designed? Was it designed to – for the purpose of concealing or disguising, and Judge – Well, what's the analogy to slag? In slag, it sounds like they laundered the money through the bail bondsman so that it became bail money. Handed it to a third party to deliver it, just like here. They handed it to a third party to deliver it. What do you mean to deliver it? I thought that the bail bondsman was supposed to post bond for these people. Yes. So now it became bail money. Well – In our case, it's just cash in a car. Well, either way, whether you're putting the cash in the car using a third party courier or you're using a bail bondsman to handle the cash and hand it to post bail, either way it conceals the ownership or the control of that money. They did it in slag with the purpose of concealing who was coming up with the money. If one of the co-conspirators and drug traffickers had showed up to deliver the cash, they were concerned the government would conceal it because that would reveal its existence as drug proceeds. So by using this particular driver, it somehow concealed the owner of the money? Well, Judge, it conceals who owns it. Or who conceals it. Giving it to a third party courier is the concealment aspect. Is there any case in the country where couriers carrying money back and forth has been held to be money laundering? Do you know of any drug case? Judge Welkman, no, I can't cite you to a case that involves those specific facts. We couldn't find any cases either. That's why I'm referring you to the slag case. Is this a common charge in Nebraska? I beg pardon? Is this a common charge in the District of Nebraska? The U.S. Attorney charges money laundering on these facts? It has been charged, yes, Judge. Not only in this case. I don't know if it's common. What's the point? Does it increase the guideline range or something? It does, Judge. So this is all about trying to raise the sentence? Well, Judge, the other aspect, I think, to kind of shift over to, I guess, prosecution decisions is the persons who are involved. There may be individuals who are all part of the conspiracy who never touch any of the drugs. They wouldn't be necessarily chargeable as part of the drug conspiracy, but if they're involved in laundering money. You get more points at the end of the year's evaluation if you throw the conspiracy charge in. Is that right? No, Judge, we don't have an internal point system in the U.S. Attorney's office. I withdraw the question. I'm interested on your theory that this man could not be charged with a drug trafficking conspiracy. You're saying that if all you do is curry your money for a drug dealer back to the source, that's not a conspiracy to traffic drugs? Well, Judge, I was trying to address the wider question you had asked is why would you charge this? Yeah, and you said because we couldn't charge him with drug trafficking conspiracy. No, that wasn't in answer to the specific charging decisions made in this case. I'm sorry, I was trying to address you. Well, you said there might be people like, I thought you said there might be people like this who can't be charged in the drug case. And I didn't intend to say at like this. Oh, well, I thought that was the point of the question is why would this man be charged with money laundering? Well, and the immediate effect, Judge, is the guideline difference that you've described already. Well, suppose that we think there isn't a factual basis here. Does it follow necessarily that the lawyer was ineffective? No, Judge, I don't think it does. And I think you can look to the decision by the district court finding that the elements were satisfied, showing all of the five substantive elements. So even if that was error, it's not outside the bounds of broad range of competent lawyering or wherever Strickland puts it? And I think you can gain confidence in that conclusion in the fact that you had not only a magistrate but also an Article III judge, both of whom decided, yes, this is sufficient as a factual basis. I will rely on our brief concerning the other issues. All right, very well. We'll take a careful read of the brief. Thank you. Thank you, sir. Mr. Brandt, I think you used all of your time. Any other questions for Mr. Brandt? Judge Beam? I don't know. I think we understand the case. Well, I'll give you one minute. I'll give you one minute. You look eager. And you were appointed under the Criminal Justice Act. And we appreciate your willingness to accept the appointment. So as long as we're here, we might as well hear you out. I appreciate that. I'll say if the court says the factual basis is insufficient, that the remedy should be to remand for an evidentiary hearing to find out if counsel is ineffective because that's the threshold question. Mr. Mazza established he didn't have a factual basis. He says, look, I was told to plead guilty. This is what he's saying in his 2255. That's all taken as true. If the court finds there was no factual basis, I urge the court to send it back to the district court for an evidentiary hearing to find out if counsel is ineffective. Right now, everything says counsel was ineffective. But if you're going to affirm simply because we don't know about ineffective assistance, please remand it for an evidentiary hearing to find out that part if the factual basis is ineffective. What would we do at the hearing? At evidentiary hearing, the parties would testify about what was said, what was the advice. Did Mr. Mazza say, I don't want to plead guilty? We just assume that the lawyer thought mistakenly that there was a factual basis. But if as a matter of law, that was not incompetent, then why would we need a hearing? I would say that it's incompetent. It falls below the objective standard of reasonableness to tell somebody to plead guilty to something they're not guilty of. And the prejudice is to be sentenced and have an increased statutory, increased sentencing guidelines. Is that necessarily, is that always the case, though, if it's a close call? I can't say it's always the case in court. So you would concede if there's a close call on factual basis and the lawyer. Sometimes there are. If it's a 51-49 case and he got it wrong on the 49 side, he might not have been below the objective standard of reason. Sometimes we lawyers have good reasons to tell clients to plead guilty to avoid extra. That's just the case. But maybe that's why we need an evidentiary hearing, Your Honors. All right. Well, I'm glad we gave you the rebuttal. Thank you again for accepting the appointment. Thank you, Mr. Higgins, for your argument. The case is submitted and the court will file an opinion in due course.